J-A28009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1631 EDA 2022 |

Appeal from the Order Entered June 7, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0002457-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: N.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1632 EDA 2022 |

Appeal from the Decree Entered June 7, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000177-2022

BEFORE:  PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED MARCH 7, 2023**

D.S. ("Father") appeals from the Order and Decree entered in the Philadelphia Court of Common Pleas changing the goal for his child, N.N. ("Child"), born in 2015, to adoption and terminating Father's parental rights to Child. On appeal, Father points to ambiguities in the evidence presented by

the Philadelphia Department of Human Services ("DHS") in support of his challenges to the goal change and termination. We affirm.

Child lived with his mother, S.S. ("Mother") and her paramour until January 2019, when he was adjudicated dependent based on a finding that Mother was abusing drugs. Child was placed with his maternal grandmother. Six months later, in July, genetic testing confirmed that Father was Child's biological father. At a subsequent permanency review hearing, the dependency court directed Father to comply with a mental health assessment and drug screen. The court also directed Father to resolve drug-related criminal charges pending in Florida.

Over the next approximately three years, Father was relatively consistent in attending supervised visits with Child. However, Father failed to participate in a mental health assessment or a drug screen. Furthermore, he never demonstrated any interest or curiosity about Child's therapy or medical care. Finally, Father never provided DHS with any evidence that he had addressed the pending criminal charges in Florida.

DHS filed a petition to change Child's goal to adoption and a petition to involuntarily terminate Father's parental rights on March 17, 2022. On June 7, 2022, after a hearing, the orphans' court found Father had failed or refused to perform parental duties for over six months, and further, that Father's refusal would not be remedied. The court therefore terminated Father's

parental rights and changed Child's goal to adoption. This timely appeal followed.

Father's first two issues challenge the court's termination of his parental rights under 23 Pa.C.S.A. § 2511(a)(1) and (2). When this Court reviews an order of an orphans' court terminating parental rights, we must accept the findings of fact and credibility determinations of the court as long as the record supports them. *See In the Interest of D.R.-W.*, 227 A.3d 905, 911 (Pa. Super. 2020). If the findings of fact are supported by the record, this Court may only reverse the order if the orphans' court made an error of law or abused its discretion. *See id*. We may not reverse merely because the record could support an alternate result. *See id*. Instead, we give great deference to the orphans' court because those courts often have the opportunity to observe the parties first-hand over the course of multiple hearings. *See In re Adoption of K.M.G.*, 219 A.3d 662, 670 (Pa. Super. 2019). Further, the orphans' court, as the fact-finder, is free to believe all, part or none of the evidence presented and is likewise free to resolve any conflicts in the evidence. *See id*.

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. Under section 2511, the orphans' court must engage in a bifurcated process prior to terminating parental rights. *See In re L.M*., 923 A.2d 505, 511 (Pa. Super. 2007). Initially, the court must find that the party seeking termination has proven by clear and convincing

evidence that the parent's conduct satisfies any one of the eleven statutory grounds set forth for termination under section 2511 (a). **See id.**; 23 Pa. C.S.A. § 2511 (a)(1-11). If the orphans' court finds that one of those subsections has been satisfied, it must then, pursuant to section 2511(b), make a determination of the needs and the welfare of the child under the best interests of the child standard. **See In re L.M.**, 923 A.2d at 511; 23 Pa.C.S.A. § 2511(b).

Here, we conclude the orphans' court properly found DHS had proven by clear and convincing evidence that Father's conduct met the grounds for termination of his parental rights under section 2511 (a)(2). Section 2511(a)(2) provides that parental rights may involuntarily be terminated on the grounds that:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa. C.S.A. § 2511(a)(2).

Under section 2511(a)(2), then, the orphans' court was empowered to terminate Father's parental rights if DHS established that: 1) there was repeated and continued incapacity of the parent; 2) such incapacity caused Child to be without essential parental care; and 3) the incapacity cannot or will not be remedied. **See In re N.A.M**., 33 A.3d 95, 100 (Pa. Super. 2011).

On appeal, Father does not deny that he failed to comply with his case plan objectives; rather, he argues those objectives were irrelevant to his ability to parent Child. *See* Appellant's Brief, at 15 ("While it would have been nice to check off every box set up for him, it is not the case that Father failed to perform his parental duties by not completing an "objective" for which there was never any underlying basis."). We conclude Father has waived this contention by failing to raise any objection to these plan objectives in the orphans' court. The mental health and drug screens were directed as early as July 8, 2019. *See* Permanency Review Order, 7/8/19, at 2 ("Father is referred to the CEU for a dual-diagnosis assessment and 3 [random drug screens] prior to the next court date."). If Father believed this requirement was irrelevant to his ability to parent Child, he was required to raise this objection before the orphans' court. *See* Pa.R.A.P. 302(a).

In any event, our review indicates there is record support for these objectives. The record indicates Father had criminal charges pending in Florida for possession of narcotics. *See* N.T., 6/7/22, at 16-17. This circumstance was sufficient to justify DHS's and the orphans' court's directive for drug and mental health screening. So, even if Father had properly preserved his challenge to the orphans' court's conclusions pursuant to section 2511(a), it would merit no relief.

Next, Father challenges the orphans' court's conclusion that termination of his parental rights was in Child's best interest. Pursuant to section 2511(b),

the court is required to examine whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of Child. ***See In re C.M.S.***, 884 A.2d 1284, 1286-1287 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." ***Id***., at 1287 (citation omitted).

Our Supreme Court has stated the following:

[I]f the grounds for termination under subsection (a) are met, a court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. . . . [T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

As such, the trial court is required to consider "whatever bonds may exist between [Child] and [Father], as well as the emotional effect that termination will have upon [Child]." ***In re Adoption of A.C.H.***, 803 A.2d 224, 229 (Pa. Super. 2002) (citation omitted). Expert testimony is not required. ***See In re Z.P.***, 994 A.2d at 1121.

"The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 763 (Pa. Super. 2008). The panel in ***In re K.Z.S.*** emphasized that, in addition to a bond examination, the court can equally emphasize the safety needs of the

child and should consider the intangibles, such as the "love, comfort, security, and stability," the child might have with the foster parent. ***Id.***, at 760 (citation omitted).

Father argues the orphans' court erred in severing the bond Child has with Father. We conclude the record supports the court's findings, and that the court did not abuse its discretion in concluding termination would best serve Child's interests.

The court heard testimony that Child has lived with maternal grandmother for over three years. ***See*** N.T., 6/7/22, at 22. Maternal grandmother is an adoptive resource. ***See id***. Child receives wraparound services through his school. ***See id***., at 23. Maternal grandmother is being trained to provide those services. ***See id***. Maternal grandmother takes Child to all his medical and dental appointments; Father has never attended any of these appointments. ***See id***., at 24. Child receives individual behavioral therapy. Once again, maternal grandmother ensures Child attends sessions and gets briefed on Child's progress. ***See id***., at 25. Father has never been involved with Child's therapy, nor has he ever inquired about it. ***See id***., at 25-26.

Child is "happy and doing well" in maternal grandmother's care. ***Id.***, at 26. While Father's supervised visits with Child generally go well, Father has not sought to have unsupervised visits or otherwise increase their duration or frequency. ***See id***., at 19. Child's case manager opined that Child would not

suffer any irreparable harm from the termination of Father's parental rights. *See id*., at 27. The case manager noted that maternal grandmother would allow Child to continue to interact with Father, but that even if she did not, any negative impact on Child could be addressed through therapy. *See id*., at 28.

Under these circumstances, we cannot conclude the orphans' court abused its discretion in concluding that Child's best interests would be served by terminating Father's parental rights. Father's second issue on appeal merits no relief, and we affirm the termination of Father's parental rights.

In his final issue, Father challenges the court's decision to change Child's goal to adoption. However, as we have affirmed the termination decree, Father's appeal from the goal change order is moot. *See D.R.-W.*, 227 A.3d at 917.

In sum, we affirm the decree terminating Father's parental rights. We dismiss as moot Father's appeal from the order changing Child's permanency goal to adoption.

Decree affirmed. Appeal from goal change order dismissed as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/2023